UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

U.S. MAGISTRATE COURT
JSH – SDTX
FILED

MAY 20 2010   DF

CLERK OF COURT
LAREDO DIVISION

| | | |
|---|---|---|
| OSCAR PUENTE, Individually, and on Behalf of the Estate of SANDRA PUENTE, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. L-09-0110 |
| CHICAGO INSURANCE COMPANY and ENRIQUE BENAVIDES, JR., M.D., | § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is "Plaintiffs' Motion to Remand and for Expedited Consideration." (Dkt. No. 10). After considering the parties' arguments, the appropriate evidence, and the applicable law, the Court recommends the motion be GRANTED with respect to Plaintiffs' request for remand, and DENIED with respect to Plaintiffs' request for attorney's fees and costs.

## I.   BACKGROUND

On August 25, 2009, Plaintiffs filed suit in the 49th Judicial District Court of Webb County, Texas. (Dkt. No. 3 at Ex. A). In their original petition, Plaintiffs allege that Defendants Chicago Insurance Company ("CIC") and Enrique Benavides, Jr., M.D. ("Dr. Benavides") wrongfully denied settlement of Plaintiffs' medical malpractice suit, currently pending against Dr. Benavides in state court.[1] (*See id.* at ¶ 3.4). Specifically, Plaintiffs argue that they "issued settlement demands of the policy limits which fully complied with all requirements of the

---

[1] In 2001, Plaintiffs filed their medical malpractice suit against Dr. Benavides, alleging that his actions resulted in the wrongful death of Sandra Puente. (*See* Dkt. No. 3 at Ex. A). The medical malpractice suit is currently pending in the 49th Judicial District Court of Webb County, Texas. (*See id.* at ¶¶ 2.3 and 3.4).

*Stowers* doctrine," but that CIC, acting in concert with Dr. Benavides, "illegally denied these settlement demands." (*Id.*).

Plaintiffs further contend that "[a]cting jointly and with intent to deceive Plaintiffs, Defendants did not disclose the fact that consent could not be unreasonably withheld by Benavides."[2] (*Id.* at ¶ 3.5). According to Plaintiffs, Defendants represented that a $1,000,000 limit applied to Dr. Benavides's policy of professional liability insurance and that CIC, as Dr. Benavides's professional liability insurer, could not commit to a settlement without Dr. Benavides's consent. (*Id.* ¶¶ 3.4-3.5). Plaintiffs allege that CIC failed to disclose that, under the policy, Dr. Benavides's refusal to consent had to be reasonable. Plaintiffs claim that this omission was a representation that was false and misleading, and that Defendants knew that it was false and misleading at the time it was made. (*Id.* at ¶¶ 3.6-3.7). Additionally, Plaintiffs argue that Defendants, acting with the intent to hinder, delay, or defraud Plaintiffs, "agreed to unlawfully misrepresent or transfer coverage and funds to settle this case without receiving reasonably equivalent value, or alternatively, agreed to misrepresent the conditions upon which such funds are available to pay Plaintiffs' claim." (*Id.* at ¶¶ 3.8, 3.14 [sic]).

Based on these factual allegations, Plaintiffs seek a declaration that the insurance policy at issue covers the claims asserted by Plaintiffs in their pending medical malpractice suit against Dr. Benavides, and that Dr. Benavides is unreasonably withholding consent to settle for the policy limits of his professional liability insurance.[3] (*Id.* at ¶¶ 4.1-4.2). Plaintiffs also assert

---

[2] Dr. Benavides's policy of liability insurance, issued by CIC, contains a consent clause which provides that "[t]he Company shall also have the right to investigate any Claim and/or negotiate the settlement thereof, as it deems expedient, but the Company shall not commit the Insured to any settlement without the Insured's consent, which will not be unreasonably withheld." (Dkt. No. 13 at ¶ 15 and Ex. 3).

[3] During the February 18, 2010 hearing, Plaintiffs represented to the Court that there is no dispute between the parties as to whether the claims alleged in Plaintiffs' state-court suit are covered by the insurance policy at issue.

causes of action against CIC and Dr. Benavides for fraudulent transfer and civil conspiracy.[4]  (*Id.* at ¶¶ 5.1-6.4).

On October 22, 2009, CIC filed its notice of removal to federal court,[5] invoking removal jurisdiction on the basis that the parties are diverse in citizenship and the amount in controversy exceeds $75,000. (*See* Dkt. No. 1 at ¶ 6).  Plaintiffs and Dr. Benavides are citizens of Texas, and CIC is a citizen of Illinois.[6]  (*Id.* at ¶¶ 7-9).  Despite the fact that Dr. Benavides is a non-diverse defendant, CIC contends that diversity jurisdiction exists, because Dr. Benavides was improperly joined by Plaintiffs in order to defeat federal jurisdiction.[7]  (*Id.* at ¶ 9).  In support of its allegation of improper joinder, CIC claims that "there is no reasonable basis to predict that Texas law might impose liability on Dr. Benavides based on the facts alleged in this action."[8]  (*Id.*).  As such, CIC claims that removal is proper based on the diversity of citizenship between the parties properly joined. (*See id.* at ¶¶ 6 and 9).

---

[4] Additionally, Plaintiffs allege in their original petition that Defendants "secured execution of settlement offers by deception," in violation of Texas Penal Code § 32.46. (Dkt. No. 3 at Ex. A, ¶ 3.9).  However, Plaintiffs clarified during the Court's February 18th hearing that the only causes of action alleged against Defendants are declaratory judgment, fraudulent transfer, and civil conspiracy.

[5] Dr. Benavides consented to and joined in CIC's notice of removal. (*See* Dkt. No. 1 at ¶ 5).

[6] CIC is incorporated under the laws of the state of Illinois and also maintains its principal place of business in the state of Illinois. (Dkt. No. 1 at ¶ 8).  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

[7] The Fifth Circuit has adopted the term "improper joinder," noting that it is more consistent with the statutory language than the term "fraudulent joinder," which was formerly used. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

[8] In addition to addressing Plaintiffs' claims for declaratory judgment, fraudulent transfer, and civil conspiracy, CIC argues that, to the extent that Plaintiffs allege a separate cause of action under the *Stowers* doctrine, no reasonable basis exists to predict that Plaintiffs will recover against Dr. Benavides under a *Stowers* claim. (*See* Dkt. No. 16 at §§ 15-16).  However, during the Court's February 18th hearing, Plaintiffs specifically stated that they are not alleging a separate claim under the *Stowers* doctrine.

On November 23, 2009, Plaintiffs filed their motion to remand the underlying cause of action to the 49th Judicial District Court of Webb County, Texas.[9]  (Dkt. No. 10).  Plaintiffs argue that CIC has failed to meet its burden of establishing improper joinder.  (*See id.* at ¶ 10).  As such, Plaintiffs contend that the federal court lacks subject matter jurisdiction to hear this case, because there is not complete diversity of citizenship between the parties.  (*See id.*).  According to Plaintiffs, they have stated viable claims against Dr. Benavides for declaratory judgment, fraudulent transfer, and civil conspiracy.[10]  (*Id.* at ¶ 18).  Additionally, Plaintiffs claim that removal is precluded under the "common defense" exception to improper joinder.  (*See id.* at ¶ 20).

On February 18, 2010, the Court held a hearing to address Plaintiffs' motion to remand and Defendants' arguments regarding improper joinder.  Plaintiffs represented to the Court that there is no dispute between the parties as to whether the claims alleged in Plaintiffs' state-court suit are covered by the insurance policy at issue.  Accordingly, Plaintiffs only seek a declaration "that Benavides has or is unreasonably withholding consent to settle for policy limits."  (Dkt. No. 3 at Ex. A, § 4.2).  Moreover, Plaintiffs clarified that the only three causes of action alleged in their original petition are 1) declaratory judgment; 2) fraudulent transfer; and 3) civil conspiracy.

---

[9] On December 14, 2009, Defendants CIC and Dr. Benavides filed their separate responses to Plaintiffs' motion to remand.  (Dkt. Nos. 16 and 17).  Plaintiffs filed their reply and first supplemental reply on January 28, 2010 and February 18, 2010, respectively.  (Dkt. Nos. 26 and 38).  On January 29, 2010, Dr. Benavides filed his surreply. (Dkt. No. 27).  On February 23, 2010, Dr. Benavides filed his supplemental response.  (Dkt. No. 39).  Plaintiffs filed their second supplemental reply on February 26, 2010.  (Dkt. No. 40).  On March 9, 2010, CIC filed its supplemental response, and on March 12, 2010, Plaintiffs' filed their reply.  (Dkt. Nos. 41 and 42).

[10] On November 13, 2009, Dr. Benavides filed his motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  (Dkt. No. 9).  Plaintiffs filed their response on December 3, 2009, subject to their motion to remand.  (Dkt. No. 13).  On December 10, 2009, Plaintiffs filed their "First Supplement to Plaintiffs' Motion to Remand," adopting and incorporating their response to Dr. Benavides's motion to dismiss in support of their motion to remand.  (Dkt. No. 15).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1441(a), any civil action brought in a state court, over which the federal courts would have original jurisdiction, may be removed by the defendant from state to federal court.  *See* 28 U.S.C. § 1441(a); *see also Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  Suits arising under federal law are removable without regard to the citizenship of the parties.  *See* 28 U.S.C. § 1441(b); *see also Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).  In contrast, when original federal jurisdiction is based on diversity, "a defendant may remove only 'if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'"  *Gasch*, 491 F.3d at 281 (quoting 28 U.S.C. § 1441(b)).  Moreover, a defendant seeking removal under 28 U.S.C. § 1332—the federal diversity statute—must show that the amount in controversy exceeds $75,000, exclusive of interest and costs, and that complete diversity exists between the parties.  *See Smallwood*, 385 F.3d at 572.  "[A] federal court may not exercise diversity jurisdiction if any one of the plaintiffs is a citizen of the same state as any one of the defendants."  *Menendez v. Wal-Mart Stores, Inc.*, 2010 WL 445470, at *1 (5th Cir. Feb. 1, 2010).

When removal is based on an allegation of improper joinder, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state defendant was improper."  *Smallwood*, 385 F.3d at 574.  If the defendant is unable to establish improper joinder, diversity is destroyed and the court must remand the case for lack of subject matter jurisdiction.  *See id.*; *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").  "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of

the plaintiff's case." *Smallwood*, 385 F.3d at 573.  In keeping with that focus, there are two ways that a diverse defendant seeking removal may establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[11]  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Where there is no allegation of actual fraud in the pleadings, the Fifth Circuit has explained that the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).   Moreover, the removal statute must be strictly construed, and any doubt concerning the propriety of removal is to be resolved in favor of remand.  *Gasch*, 491 F.3d at 281-82.

In analyzing whether a plaintiff has a reasonable basis for recovery under state law, "the court may either: (1) conduct a Rule 12(b)(6)-type analysis or (2) in rare cases, make a summary inquiry 'to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the instate defendant.'" *Weldon Contractors, Ltd. v. Fireman's Fund Ins. Co.*, 2009 WL 1437837, at *2 (N.D. Tex. May 22, 2009) (quoting *Smallwood*, 385 F.3d at 573-74). The normal starting point for analyzing a motion to remand is with the well-pleaded allegations of the complaint, which is read leniently in favor of remand under a standard similar to Rule 12(b)(6). *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  Under such an analysis, the court looks initially at the allegations of the complaint "to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573.  "Any

---

[11] Here, there is no allegation of actual fraud in Plaintiffs' pleading of jurisdictional facts. (Dkt. No. 16 at § 6).  As such, in order to prevail on its claim of improper joinder, CIC must show that Plaintiffs are unable to establish a cause of action against Dr. Benavides in state court.  *See Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).

contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).  For purposes of a Rule 12(b)(6) inquiry, "a complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Jaramillo v. City of McAllen, Texas*, 306 Fed. Appx. 140, 143 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).  "[F]actual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true." *Id.*

Generally, if a plaintiff is able to survive a Rule 12(b)(6) challenge, there is no improper joinder.  *Smallwood*, 385 F.3d at 573.  However, in situations where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the court has discretion to pierce the pleadings and conduct a summary judgment-type analysis. *See id.*  Supporting affidavits may be considered, "to the extent that the factual allegations in [the] affidavit clarify or amplify the claims actually alleged" in the state-court petition.[12]  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) (stating that, in reviewing fraudulent joinder claims, the court may not consider post-removal evidence that presents "new causes of action or theories not raised in the controlling petition filed in state court"); *Hernandez Castellanos v. Bridgestone Corp.*, 215 F. Supp. 2d 862, 865 (S.D. Tex. 2002) (noting that, notwithstanding the plaintiffs' failure to provide an affidavit of new facts, the un-sworn

---

[12] Here, the Court informed the parties that they could submit affidavits to help clarify the factual allegations in the original petition, if they so chose.  However, while the parties have filed several responses, supplemental responses, replies, supplemental replies, and surreplies regarding Plaintiffs' motion to remand, neither Plaintiffs nor Defendants have submitted any supporting affidavits. (*See* Dkt. Nos. 16, 17, 26, 27, 38, 39, 40, 41, and 42). As such, the Court may only consider Plaintiffs' original petition for purposes of determining whether Dr. Benavides was improperly joined. *See Ford v. Property & Cas. Ins. Co. of Hartford*, 2009 WL 4825222, at *3 (S.D. Tex. Dec. 9, 2009) (noting that, where the plaintiff had not offered any additional evidence to support the allegations made in her original petition, the only evidence available to the court to determine whether the non-diverse defendant was properly joined were the allegations made by the plaintiff in her original petition).

statements by the plaintiffs' attorney did not "amplify or clarify anything in the pleadings"). The court's inquiry into whether diversity jurisdiction exists should be limited to a quick exposure of the chances of the plaintiff's claim against the in-state defendant alleged to be improperly joined. *Smallwood*, 385 F.3d at 574. Otherwise, there is a substantial risk of moving the court beyond jurisdiction and into a resolution of the merits of the plaintiff's case. *Id.*

If the Court determines that there is no reasonable basis to predict that the plaintiff might be able to recover against an in-state defendant, "a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent, *unless* that showing compels dismissal of *all defendants*." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis in original). Thus, the "common defense" rule articulated by the Fifth Circuit Court of Appeals in *Smallwood v. Illinois Cent. R. Co.* provides an exception to the reasonable basis standard for determining improper joinder. 385 F.3d 568, 572 (5th Cir. 2004) (en banc). In *Smallwood*, the court explained:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit.

*Id.* at 574. Stated differently, "there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that 'the plaintiff's case [is] ill founded as to all the defendants.'" *McDonal*, 408 F.3d at 183 (quoting *Smallwood*, 385 F.3d at 574) (internal quotation marks and citation omitted, alteration in original); *see Gasch*, 491 F.3d at 284 ("[A] meritless claim against an in-state defendant is not the equivalent of improper joinder"). Whether an in-state defendant was improperly joined is a jurisdictional, threshold issue, and courts cannot allow defenses alleged in support of claims of improper

joinder to dispose of the entire case on the merits. *Huckaby v. Gans & Smith Ins. Agency, Inc.*, 293 F. Supp. 2d 715, 717 (E.D. Tex 2003). The common defense rule, however, "is implicated only when the common defense asserted would be equally dispositive as to *all* of the defendants." *McDonal*, 408 F.3d at 184 (emphasis in original). If a district court determines that the proffered common defense "is not dispositive of every claim against every defendant, it should continue to deny remand and proceed with the proper disposition of the case." *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638-39 (5th Cir. 2004).

### III.   ANALYSIS

#### a.   There Is No Reasonable Basis for the Court to Predict that Plaintiffs Might be Able to Recover Against Dr. Benavides

In reviewing the state court petition and the related filings, Plaintiffs' motivation for filing the lawsuit is clear. They are trying to force CIC into paying off the policy limits ($1,000,000) of Dr. Benavides's insurance policy before liability is actually determined in the underlying state-court lawsuit. In the "Remedies" section of their original petition, Plaintiffs contend that they are entitled to "an order compelling Benavides to consent [to settlement] before trial on the merits commences." (Dkt. No. 3 at Ex. A, ¶ 7.3). The Court cannot find any requirement under Texas law where Dr. Benavides owes a duty or has an obligation to settle with Plaintiffs. *See, e.g., Decker v. Lindsay*, 824 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1992, no writ) (stating that ". . . no one can compel the parties to negotiate or settle a dispute unless they voluntarily and mutually agree to do so"). A party has a substantial right to defend his lawsuit, and is not required to sacrifice this substantial right. *See, e.g., Gunn Infiniti, Inc. v. O'Byrne*, 963 S.W.2d 787, 792-93 (Tex.App.—San Antonio 1998), rev'd on other grounds, 996 S.W.2d 854 (Tex. June 24, 1999).

In order to facilitate a settlement in the underlying state-court lawsuit, Plaintiffs bring causes of action for declaratory judgment, fraudulent transfer and civil conspiracy." (Dkt. No. 3 at Ex. A).  For the reasons stated below, the Court finds these are not viable causes of action, and that both CIC and Dr. Benavides will share the common defense under *Smallwood* that "there is no reasonable basis for predicting that state law would allow recovery" against them. *See Smallwood,* 385 F.3d at 571.

### i. Declaratory Judgment

In their original state-court petition, Plaintiffs seek a declaration that 1) Dr. Benavides's policy of liability insurance covers the claims asserted by Plaintiffs in their pending wrongful death suit, and that 2) Dr. Benavides has or is unreasonably withholding his consent to settle the wrongful death suit for policy limits.  (Dkt. No. 3 at Ex. A, ¶¶ 4.1-4.2).  As previously stated, Plantiffs now concede that there is no dispute as to whether the insurance policy at issue applies to the claims alleged in Plaintiffs' wrongful death suit.[13]  *See Rudisill v. Arnold White & Durkee, P.C.,* 148 S.W.3d 556, 565 (Tex.App.—Houston [14th Dist.] 2004, no pet.) (finding no justiciable controversy where the appellees consistently and expressly acknowledged the appellants' rights under the agreement).  As such, Plaintiffs' sole issue for declaratory relief is whether Dr. Benavides's refusal to consent to settlement is unreasonable under the terms of his policy.

Plaintiffs contend in their motion to remand that they are entitled to relief under the Texas Declaratory Judgment Act as "persons 'interested' in the policy provision at issue because

---

[13] Plaintiffs further stated, at the February 18, 2009 hearing, that they only pled this first prong of their declaratory judgment cause of action because a determination that the insurance policy at issue applies to the state-court suit is a condition precedent to a finding of whether Dr. Benavides is unreasonably withholding his consent.

their legal rights are affected by its interpretation."[14]   (Dkt. No. 10 at ¶ 13).   In clarifying their

interest, Plaintiffs explain that "if the Texas District Court determines [Dr. Benavides] is

unreasonably withholding consent to settle [the state-court suit], [CIC] will be forced to settle the

case with Plaintiffs, or it will be subjected to Stowers liability far in excess of the policy limits

after judgment." (*Id.*).   In addition, Plaintiffs state that there is no fraudulent joinder regarding

Dr. Benavides because he is a necessary party under Tex. Civ. Prac. & Rem. Code § 37.006.

(*See id.* at ¶ 14).

     Under the Texas Declaratory Judgment Act, "[a] court of record within its jurisdiction

has power to declare rights, status, and other legal relations whether or not further relief is or

could be claimed."[15]   Tex. Civ. Prac. & Rem. Code § 37.003(a) (Westlaw 2010).   The purpose of

the Texas Declaratory Judgment Act is "to settle and to afford relief from uncertainty and

insecurity with respect to rights, status, and other legal relations." *Id.* at § 37.002(b); *see Indian

Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 699 (Tex.App.—Houston [1st Dist.]

2007, no pet.).   More specifically, the Texas Declaratory Judgment Act provides:

> A person interested under a deed, will, written contract, or other writings
> constituting a contract or whose rights, status, or other legal relations are affected
> by a statute, municipal ordinance, contract, or franchise may have determined any
> question of construction or validity arising under the instrument, statute,
> ordinance, contract, or franchise and obtain a declaration of rights, status, or other
> legal relations thereunder.

---

[14] Plaintiffs seek a judgment against Dr. Benavides in connection with their medical negligence suit, currently pending in state court. (*See* Dkt. No. 3 at Ex. A, ¶¶ 3.3-3.4).   Under the terms of Dr. Benavides's policy of liability insurance, CIC is defending Dr. Benavides in the state-court suit. (*See id.* at ¶ 3.4).   Plaintiffs made an offer of settlement for the $1,000,000 policy limits, which was subsequently denied by Dr. Benavides. (*See* Dkt. No. 10 at ¶ 13).

[15] Generally, "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2201." *Ondova Ltd. Co. v. Manila Industries, Inc.*, 513 F. Supp. 2d 762, 776 n.12 (N.D. Tex. 2007) (internal quotation omitted). However, in the instant case, the question is whether Plaintiffs can state a claim against Dr. Benavides in state court. *See id.*   Accordingly, because the question is improper joinder, the Court must analyze Plaintiffs' claim under Texas state law rather than federal law. *See id.*

Tex. Civ. Prac. & Rem. Code § 37.004(a). "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." *Id.* at § 37.006(a). Accordingly, from the face of their state court petition, Plaintiffs appear to have set out sufficient facts that may entitle them to a declaratory judgment, which would require the joinder of Dr. Benavides as a necessary party.

However, Defendants have raised the issues of standing and ripeness regarding Plaintiffs' ability to seek declaratory relief, which ultimately affects whether any court, federal or state, has subject matter jurisdiction. (*See* Dkt. Nos. 16 at ¶¶ 17-26 and 17 at ¶¶ 15-29). Addressing the issue of ripeness, Dr. Benavides argues that it is inappropriate for Plaintiffs to seek declaratory relief as to CIC's duty to indemnify at this time. (*See* Dkt. No. 17 at ¶ 21). However, the Court construes Plaintiffs' state-court petition as seeking a declaration that Dr. Benavides, at the present time, is unreasonably withholding his consent to settlement—not whether CIC, at the present time, has a duty to indemnify. As such, the only issue before the Court pertaining to Plaintiffs' ability to seek declaratory relief is whether Plaintiffs have standing.

"The standing doctrine identifies those suits appropriate for judicial resolution." *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). "[U]nder Texas law, standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and a real [case-or] controversy[16] between the parties, which … will be actually determined by the judicial declaration sought." *Id.* (citations and quotations omitted). To meet the standing requirements, a plaintiff's petition must establish that there is a personal stake in the alleged dispute and that the injury suffered is concrete and particularized. *See id.*

---

[16] "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citations and quotations omitted).

Defendants argue that Plaintiffs do not have standing to sue under the Declaratory Judgment Act until there is either a judgment against Dr. Benavides or a settlement in the underlying state-court case. (*See* Dkt. Nos. 16 at ¶ 17 and 17 at ¶ 15). Plaintiffs, however, contend that they have standing as "third party or intended beneficiaries" of the insurance contract between CIC and Dr. Benavides.[17] (Dkt. No. 10 at ¶ 15).

This Court's examination of Texas law leads it to conclude that Plaintiffs, currently, do not have a legally cognizable interest in the insurance policy between CIC and Dr. Benavides that would allow them to have standing to bring a declaratory judgment action. "Insurance policies are contracts." *Nat'l. Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 610 (E.D. Tex. 2005) (citations and quotations omitted). It is undisputed that Plaintiffs are not a party to Dr. Benavides's professional liability policy. In Texas, the general rule is that an injured third party cannot enforce the policy directly against the insurer until it has been established, by judgment or settlement, that the insured has a legal obligation to pay damages to the injured party.[18] *State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989); *Nat'l. Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 620 (E.D. Tex. 2005) (citations omitted); *Standard Fire Ins. Co. v.*

---

[17] In support of this proposition, Plaintiffs cite two cases, *Paragon Sales Co., Inc. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex. 1989) and *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983). In *Dairyland,* the Texas Supreme Court held that, for the purposes of recovering attorney's fees under an insurance contract, a third party who has obtained a judgment against an insured is an intended third-party beneficiary of the insurance contract and is entitled to enforce the contract. *Dairyland*, 650 S.W.2d at 775-76; *see also Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 150 (Tex. 1994). *Dairyland* is distinguishable because, unlike in the case at bar, the third party had already obtained a judgment against the insured. *See Dairyland*, 650 S.W.2d at 772. Further, *Dairyland* held that because automobile insurance is required by law, persons injured in automobile accidents are third-party beneficiaries. *See id.* at 775-76. Courts have not yet held the same to be true of medical malpractice insurance. In *Paragon*, the Texas Supreme Court held that to bring a lawsuit to enforce a contract, a third party must establish the existence of the contract and his or her right to recover thereunder. *See Paragon*, 774 S.W.2d at 660. As set forth in this section, *Paragon* is distinguishable because, unlike here, the plaintiff in *Paragon* was able to show a contractual provision that entitled it to recovery. *See id.* at 660-61.

[18] The roots of this rule seem to lie in the no-action clause commonly found in liability insurance policies. *See Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 888 (Tex.App.—Dallas 2008, pet. denied). "These clauses provide that no action will lie against an insurer until its insured's obligation to pay has been fixed by judgment or by an agreement that includes the insured, the insurer, and the claimant." *Id.* (citation omitted).

*Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995); *see also Russell v. Hartford Cas. Ins. Co.*, 548 S.W.2d 737, 740-41 (Tex.Civ.App. 1977, writ ref'd n.r.e.) (precluding joinder of a liability or indemnity insurance company in a tort case unless the insurance company is by statute or contract directly liable to the person injured or damaged).   Texas courts have referred to this principle as the "no-direct-action" rule.  *See Ohio Cas. Ins. Co. et. al., v. Time Warner Entm't Co.*, 244 S.W.3d 885, 888 (Tex.App.—Dallas 2008, pet. denied).   Moreover, Texas courts have construed this rule as being a rule of standing, under which injured third parties must establish liability, either by judgment or settlement, before bringing suit as third-party beneficiaries against the insurer.  *See id.* at 889.

However, "[o]ne who is not a party to a contract of insurance may nevertheless have standing to enforce the contract if the contract was made for that person's benefit." *Crowley v. Texas Snubbing Control, Inc.*, 812 F. Supp. 1437, 1445 (S.D. Miss. 1992) (citing *Quilter v. Wendland*, 403 S.W.2d 335, 337 (Tex. 1966); *see Hermann Hosp. v. Liberty Life Assurance Co.*, 696 S.W.2d 37, 40 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (stating that insurance policies are no exception to the rule that one for whose benefit a contract is made may enforce the contract).   A non-party to an insurance contract may enforce a contract (or have standing under the contract) "if the non-party is the legally intended beneficiary of the contract or a judgment creditor of the insured." *Sassin*, 894 F. Supp. at 1027 (citations omitted).   Here, the underlying lawsuit to determine whether Plaintiffs will be judgment creditors of Dr. Benavides is still pending in state court.   Therefore, the Court must determine whether Plaintiffs have standing to sue under Dr. Benavides' insurance policy as intended third-party beneficiaries. The Court finds that they do not.

"Injured third parties can be intended third-party beneficiaries of insurance contracts only where contractual or statutory provisions grant those third parties rights in the insurance agreement." *Crowley*, 812 F. Supp. at 1445 (applying Texas law). In the instant case, Plaintiffs have pleaded no facts that would support a determination that they are *intended* third-party beneficiaries under Dr. Benavides's policy. Further, Plaintiffs have not directed the Court to any statute or contractual provision that bestows upon them the status of "intended third-party beneficiary." Nor has this Court found any such statute or contractual provision.

Under Texas law, the controlling factor in determining whether a third party may enforce (or have rights or interests under) a contract or a contract provision is the intention of the contracting parties. *See Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501, 503 (Tex. 1975) (citation omitted). The interpretation of an insurance contract, including whether it is ambiguous, is a legal determination. *See Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1458 (5th Cir. 1996). In deriving intent, the Court must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties. *See Smith*, 525 S.W.2d at 503 (citations omitted). The intent of the contracting parties is discerned from the four corners of the instrument. *See Palma*, 79 F.3d at 1458.

In the instant case, none of the Plaintiffs are listed as an additional insured or a beneficiary on Dr. Benavides' insurance policy. Moreover, the insurance policy in question only grants third parties—not Plaintiffs specifically—one general right, *i.e.*, to "bring suit against the [Insurer] to recover on an agreed settlement or on a final judgment against an Insured after actual and contested trial on the merits . . . ." (*See* Dkt No. 16 at Ex. B, pg. 10). This contract provision is commonly referred to as a "no-action" clause. *See generally Time Warner Entm't*

*Co.*, 244 S.W.3d at 888. Since there is a "no-action" clause in the insurance policy, it is clear that CIC's and Dr. Benavides's intentions were not to give any rights or interests to injured third parties until there was a final judgment or settlement on a claim. Accordingly, this Court concludes that Plaintiffs are not intended third party beneficiaries under Dr. Benavides's insurance policy.[19]

Nevertheless, the fact that Plaintiffs are neither intended third-party beneficiaries nor judgment creditors does not completely foreclose the issue of whether they have standing to bring a declaratory judgment action in this matter. In *Farmers Texas County Mut. Ins. Co. v. Griffin*, the Texas Supreme Court stated that there are instances where a court may appropriately decide the rights of parties before judgment is rendered in the underlying tort lawsuit. *See* 955 S.W.2d 81, 83-84 (Tex. 1997). The court held that the issue of indemnity is justiciable in a declaratory judgment action prior to the liability determination in the underlying suit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.[20] *See id.* at 84. Although the issue of the injured third party's standing was neither raised nor discussed in *Griffin*, the Texas Supreme Court allowed the declaratory judgment to proceed against both the insured and the injured third party.

---

[19] This outcome is consistent with the general principle that when someone is injured and makes a claim under an insured's policy, that alone does not make the injured an "intended third party beneficiary." *See generally Lopes v. State Farm Mut. Auto. Ins. Co.*, 2001 WL 237383 at *2 (N.D. Tex. Mar. 6, 2001) (concluding that the cause of action asserted under the Texas Insurance Code did not state a claim upon which relief could be granted because the plaintiff had pleaded no facts to support a determination that he was an intended third party beneficiary).

[20] In *Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, the Texas Supreme Court reiterated that courts should be cautious before determining that the duty to indemnify is justiciable before the insured's liability is actually determined. 300 S.W.3d 740, 744-45 (Tex. 2010). The court reasoned that it may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proved in the underlying lawsuit. *See id.* (citations omitted).

Other courts, interpreting Texas law, have indicated that an injured third party, who has sued the insured, but has not yet obtained a judgment in state court, is a proper party to a declaratory judgment action brought by the insurer against both the insured and injured third party.[21] *See Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422, 424 (5th Cir. 1942) ("whether an insurer is bound [under] an automobile insurance policy by a judgment against its insured, presents a controversy for declaratory judgment as between it, its insured and the plaintiff in a damage suit against its insured"); *Atlantic Cas. Ins. Co. v. Ramirez*, 651 F. Supp. 2d 669, 684-86 (N.D. Tex.. 2009) (finding that injured parties were proper parties in declaratory judgment action involving coverage dispute); *State & County Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 411 (Tex.App.—Fort Worth 2007, no pet.) (noting that language from Texas Supreme Court opinions in the last decade suggests that injured parties may now be considered proper parties to a declaratory judgment action brought by an insurer against its insured to determine coverage); *Richardson v. State Farm Lloyds Ins.*, 2007 WL 1018651, at *5 (Tex.App.—Fort Worth 2007, review denied) (citing *Griffin* for the proposition that a declaratory judgment action is permissible when brought by an insurance company against a third party seeking to have the insurance company defend or indemnify for conduct of its insured). However, only a few courts have discussed why an injured third party has standing (or is a proper party) when an insurer brings a declaratory action seeking to determine that it has no

---

[21] Texas appellate courts are at odds on the issue of whether the injured third party has standing to bring a declaratory judgment action against the insurer on its duty to defend and/or indemnify the insured. *See e.g., Lancer Ins. Co. v. Perez*, __S.W.3d__, 2009 WL 4981052 (Tex.App.—San Antonio, December 23, 2009, pet. for review) (holding that injured third party did not have standing); *but see, Richardson v. State Farm Lloyds Ins.*, 2007 WL 1018651, at *5 (Tex.App.—Fort Worth, April 5, 2007, review denied) (concluding that "a declaratory judgment action is permissible when brought by a third party seeking to have the insurance company defend and indemnify for the conduct of its insured"); *see also Feria v. CU Lloyd's of Texas*, 2001 WL 1263666, at *2 (Tex.App.—Dallas Oct. 23, 2001, no pet.) (finding that the injured party had no right to intervene in a declaratory judgment action to determine whether the insurer had a duty to defend its insured where no judgment had been obtained in the state-court tort suit and the injured party could not sue the insurer directly to force it to defend its insured).

duty to defend and to indemnify the insured, but the injured third party does not have standing to proceed directly against the insurer until there is either a judgment or a settlement.

In explaining why an injured third party has standing in these declaratory actions regarding coverage disputes, three federal district courts have reasoned that an injured third party's standing is a result of privity by virtue of a shared legal interest with the insured.[22] *See Ramirez*, 651 F. Supp. 2d at 682-83; *Breaux*, 368 F. Supp. 2d at 620-21; *Century Sur. Co. v. Hardscape Constr. Specialties*, 2006 WL 1948063, at *5 (N.D. Tex. July 13, 2006). "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Ramirez*, 651 F. Supp. 2d at 682 (quoting *Breaux*, 368 F. Supp. 2d at 621) (internal quotations omitted). Those courts reasoned that because the injured third party derives its rights, if any, to collect insurance proceeds directly from the rights of the insured, the parties are deemed to be in privity by virtue of their shared legal interest. Stated differently, when there is a case and controversy between the insurer and the insured, the injured third party may derive an interest in that controversy from the insured.

In the instant case, Plaintiffs are seeking a declaration that Dr. Benavides is violating the terms of his policy by unreasonably withholding his consent to settle Plaintiffs' wrongful death suit.[23] This is very different from a situation where the insurer brings a declaratory judgment suit

---

[22] In addition, a Texas Appellate Justice, in a concurring opinion, reasoned that if there is an adjudication that an insurance policy does not cover the insured's alleged misconduct, then the injured third party's contingent right to recover under the policy would be vitiated. *See Spruiell v. Lincoln Ins. Co.*, 1998 WL 174722, at *5 (Tex.App.— Amarillo 1998, pet. denied) (Quinn, J., concurring). As a result, he opined that an injured third party has "a personal economic stake and singular economic interest" in the determination of whether an insured's policy covers any alleged misconduct and concluded that the injured third party has a justiciable interest in this type of litigation that cloaks that party with standing. *See id.* However, the case before this Court is distinguishable because coverage is not at issue.

[23] One Rhode Island District Court has addressed a similar provision in a contract prohibiting an insured from "unreasonably" withholding his consent to a proposed settlement. *See Clauson v. New England Ins. Co.*, 83 F.

against both the insured and the injured party to determine whether the insurer has a duty to defend and a duty to indemnify the insured. This Court finds no Texas case law (and Plaintiffs do not cite any case law) where an injured third party has standing (or is a proper party) in a declaratory judgment action outside the context of coverage, *i.e.*, where the insurer contends that there are no duties to defend and to indemnify the insured under an insurance policy.

Moreover, unlike in *Ramirez, Breaux*, and *Hardscape Const. Specialties*, here, there is no privity by virtue of a shared legal interest between Dr. Benavides and Plaintiffs from which Plaintiffs can derive a legal interest to have standing for declaratory relief. There is no case or controversy between CIC and Dr. Benavides regarding whether Dr. Benavides is unreasonably withholding consent. In fact, the Court understands that there is no case or controversy between CIC and Dr. Benavides as to any provision of the insurance policy. Put simply, there is no case or controversy from which Plaintiffs can derive an interest to support standing for any declaratory relief. Furthermore, Dr. Benavides's interest in not settling the lawsuit and Plaintiffs' interest in obtaining a declaration that Dr. Benavides's actions are unreasonable are obviously not "shared" legal interests—in fact, these interests are completely diverse. Here, Plaintiffs are simply trying to create a case or controversy because they believe that Dr. Benavides is unreasonably withholding consent to settle the underlying state case. Again, there is no Texas case law that supports what Plaintiffs are attempting to accomplish.[24]

---

Supp. 2d 278 (D.R.I. 2000). That court explains that this type of provision is "directed at situations in which it is unlikely that any potential judgment will exceed the policy limit; and, therefore, the insured may have little incentive to consent to a settlement because the cost of defense and the risk of a larger judgment are borne, entirely by the insurer." *Id*. at 281.

[24] To the contrary, *Burlington N. & Santa Fe Rwy. Co. v. S. Plains Switching Ltd.*, 174 S.W.3d 348 (Tex.App.—Fort Worth 2005, no pet.) and *Clauson v. New England Ins. Co.*, 83 F. Supp. 2d 278 (D.R.I. 2000) do not support Plaintiffs' belief that they can bring a declaratory action. These two cases are easily distinguishable. In *Burlington*, the two parties to the contract—not an injured third party—were litigating over whether consent was unreasonably withheld. *See Burlington*, 174 S.W.3d at 352-54. Furthermore, in *Clauson*, even though the insurer attempted to limit its liability by claiming the insured was unreasonably withholding consent, the injured third party had already

Finally, to support their claim to seek declaratory relief, Plaintiffs claim that they "are persons 'interested' in the policy provision at issue because their legal rights are affected by its interpretation." (*See* Dkt. No. 10 at ¶ 13). They contend that, since they have made a *Stowers* Demand for the policy limits, a judicial declaration that Dr. Benavides is wrongfully withholding his consent to settle would force CIC to settle or would make CIC liable to Plaintiffs for any excess judgment over the policy limits after trial. (*See* Dkt. No. 26 at ¶ 7.).

Under the *Stowers* Doctrine, there is a common law duty on liability insurers to settle third-party claims against their insureds when reasonably prudent to do so. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. 1929). For the duty to arise there must be coverage for the third-party's claim, a settlement demand within the policy limits, and reasonable terms "such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). "When these conditions coincide and the insurer's negligent failure to settle results in an excess judgment against the insured, the insurer is liable under the *Stowers* Doctrine for the entire amount of the judgment, including that part exceeding the insured's policy limits." *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (citing *G.A. Stowers Furniture Co.*, 15 S.W.2d at 548).

Here, Plaintiffs assert that CIC's liability would exceed the policy limits if Dr. Benavides is unreasonably withholding his consent to settle.[25] This is very different from a situation where CIC's liability increases under the *Stowers* Doctrine for negligent failure to settle resulting in a

---

obtained a judgment against the insured before initiating a lawsuit against the insurer. *See Clauson*, 83 F. Supp. 2d at 280-81.

[25] As such, Plaintiffs ask the Court for "a declaration that Chicago Insurance Company is jointly and severally liable for the entire amount of the judgment, if any, in excess of policy limits in the underlying case." (Dkt. No. 3 at Ex. A, ¶ 7.2). However, as explained throughout this opinion, the Court finds no legal authority that supports granting this type of relief.

judgment against Dr. Benavides in excess of the policy limits.  Again, the Court does not find (and Plaintiffs do not cite) any case law that supports Plaintiffs' assertions.  As such, for all the reasons stated above, the Court finds that Plaintiffs do not have standing to bring their declaratory judgment claim, and there is no reasonable basis for the Court to predict that Plaintiffs might be able to obtain declaratory relief.

### ii. Fraudulent Transfer

In their original state-court petition, Plaintiffs allege that "Defendant Chicago Insurance Company and Benavides engaged in a fraudulent transfer as defined by Tex. Bus. & Com. Code Ann. § 24.001 *et seq.*" (Dkt. No. 3 at Ex. A, ¶ 5.1).  According to Plaintiffs, "[t]his transfer was and is being made with actual intent to hinder, delay, or defraud Plaintiffs" and "[t]his transfer was made without exchange of reasonably equivalent value."  (*Id.* at ¶¶ 5.2-5.3).  Plaintiffs allege in their original petition that Defendants agreed to unlawfully "transfer coverage and funds to settle this case without receiving reasonably equivalent value." (*Id.* at ¶ 3.8).

While Plaintiffs plead in the broadest of accusations and scope (*e.g.*, "particularly, but not limited to"), the Court understands Plaintiffs' argument to be that, by Dr. Benavides "wrongfully" refusing to consent to settlement, he has engaged in a fraudulent transfer that prevents Plaintiffs from having the ability to obtain the insurance proceeds (under the *Stowers* Doctrine) to satisfy a potential judgment in excess of the policy limits.  (*See* Dkt. No. 40 at pgs. 6-7).  In other words, Plaintiffs allege that by wrongfully withholding his consent, Dr. Benavides has "fraudulently transferred a contractual right [or asset] away from the Plaintiffs" to recover an amount in excess of the policy limits under the *Stowers* Doctrine. (*See* Dkt. No. 26 at ¶ 9).  In response, Defendants have made various arguments that Plaintiffs' accusations fail to describe an asset that was transferred under the Texas Uniform Fraudulent Transfer Act ("UFTA").

The purpose of the UFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.—Houston [1st Dist.] 2002, no pet.). Under the UFTA, "transfer" is defined to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code § 24.002(12).

First, assuming *arguendo* that Dr. Benavides is "unreasonably" withholding his consent to settle with Plaintiffs, the Court simply cannot conclude that, under Texas law, Dr. Benavides is disposing of or parting with an asset or an interest in an asset under Plaintiffs' allegations. Again, the Court finds no Texas case law that supports Plaintiffs' assertions that Dr. Benavides's actions are tantamount to a fraudulent transfer. The fact that Dr. Benavides could change his mind and consent to settlement in the underlying state-court lawsuit at some point in the future demonstrates that no transfer whatsoever has occurred—any rights, if any, that Dr. Benavidess has under the *Stowers* Doctrine would still be in place.

Second, the fact that a *Stowers* action belongs solely to Dr. Benavides is also instructive in concluding that, by unreasonably withholding consent, Dr. Benavides has not made a fraudulent transfer. *G.A. Stowers Furniture Co.*, 15 S.W.2d at 547; *see also, Whatley v. City of Dallas*, 758 S.W.2d 301, 307 (Tex.App.—Dallas 1988, writ denied) (stating that the right to assert a *Stowers* claim against an insurer belongs solely to the insured). Under the *Stowers* Doctrine, it is the insured who is injured by an excess jury verdict—not the judgment creditor. *See Samford v. Allstate Ins. Co.*, 529 S.W.2d 84, 86 (Tex.Civ.App.—Corpus Christi, 1975, writ ref'd n.r.e.). As such, Texas courts have not allowed an injured third party (without an

assignment)[26] to sue an insurer for failure to settle under the *Stowers* Doctrine. *See Coronado v. Employees Nat'l Ins. Co.*, 577 S.W.2d 525, 532 (Tex.Civ.App.—El Paso, 1979), aff'd, 596 S.W.2d 502 (Tex. 1979) (concluding that the creditor had no cause of action for the excess above the policy limits.); *Samford*, 529 S.W.2d at 86-87; *Cook v. Superior Ins. Co.*, 476 S.W.2d 363 (Tex.Civ.App—Beaumont 1972, writ ref'd n.r.e.).

Moreover, if Dr. Benavides desired, he could simply defeat any future attempts by Plaintiffs to recover in a turnover proceeding against him by being content that CIC abided by his wishes not to settle the claim. *See Nationwide Mut'l Ins. Co. v. Chaney*, 2002 WL 31178068, at *4 n.5 (N.D. Tex. Sept. 30, 2002) (noting that even if the insured had a viable *Stowers* claim against his insurer, a court-ordered turnover forcing the insured to assign such a claim to the plaintiff would be inappropriate because the insured appeared satisfied with the insurer's handling of the claim, despite the fact that it left the insured exposed to a judgment); *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex.App.—Corpus Christi 1994, writ denied) (reasoning that the insured's right to sue for failure to settle is not subject to involuntary assertion, and that an insured's satisfaction with his insurer's representation will prevent the forced turnover of any *Stowers* claim he may have to the tort claimant). Therefore, under Texas law, there cannot be a fraudulent transfer merely by Dr. Benavides unreasonably withholding his consent. It does not matter whether Dr. Benavides consents or does not consent to settlement, he can still effectively prevent Plaintiffs from benefiting from any potential *Stowers* rights by not assigning his claim and by being satisfied with CIC's actions in not settling the underlying state-court case.

For the reasons stated above, the Court concludes that there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against Dr. Benavides under the UFTA.

---

[26] *See Decker v. Lindsay*, 824 S.W.2d 247, 250 (Tex.App.—Houston [1st Dist.] 1992, no writ) (noting that an insured may assign to the plaintiff his *Stowers* rights against the insurer, in return for a covenant that the plaintiff will not execute on the insured's personal assets).

### iii.  Civil Conspiracy

Finally, Plaintiffs allege that CIC, Dr. Benavides, and others "engaged in a civil conspiracy to use illegal means to harm and defraud Plaintiffs." (Dkt. No. 3 at Ex. A, ¶ 6.1).  In Texas, the elements of a civil conspiracy claim are:  "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (internal quotes omitted)).  Specifically, a plaintiff alleging such a claim must show "that two or more persons combined to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (citation and internal quotations omitted).  "A defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709 (5th Cir. 2009).  Moreover, "if an act by one person cannot give rise to a cause of action, then the same act cannot give rise to a cause of action if done pursuant to an agreement between several persons." *Murray*, 405 F.3d at 295 (quoting *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 95 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.) (internal quotes omitted)).  However, a plaintiff may rely on inferences to establish a claim of civil conspiracy. *Lang v. Lee*, 777 S.W.2d 158, 163 (Tex.App.—Dallas 1989, no writ).

Here, in the context of their civil conspiracy claim, Plaintiffs contend that "[t]he illegal means include misrepresenting and failing to disclose policy provisions, and other wrongful acts alleged in this petition." (Dkt. No. 3 at Ex. A. ¶ 6.2).  Specifically, Plaintiffs claim that CIC represented that, under the terms of the policy, CIC was unable to commit to a settlement without

Dr. Benavides's consent. (*Id.* at ¶ 3.5). According to Plaintiffs, CIC and Dr. Benavides failed to disclose that Dr. Benavides's consent to settlement could not be unreasonably withheld. (*Id.*). Based on these contentions, Plaintiffs argue that CIC and Dr. Benavides knowingly made false and misleading representations regarding the conditions upon which the insurance funds would be available for settlement. (Dkt No. 3 at Ex. A, ¶¶ 3.5-3.8). It appears Plaintiffs are basing their civil conspiracy argument on the underlying tort of fraud.

According to the Texas Supreme Court, the elements of fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

Proximate cause is also an essential element of a fraud claim. *See Employees Ret. Sys. of Texas v. Putnam, LLC*, 294 S.W.3d 309, 315 (Tex.App.—Austin 2009, no pet.) (citation omitted). Proximate cause requires (1) cause-in-fact and (2) forseeability. *Id.* at 316 (citing *Columbia Med. Ctr. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008). To establish cause-in-fact, a plaintiff must show that a defendant's act or omission was "a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* (quoting *Columbia Med. Ctr.*, 271 S.W.3d at 799) (internal quotation omitted)).

In this case, Plaintiffs have failed to show that any injury or harm resulted from Defendants' alleged failure to disclose the terms of the policy's consent clause. When asked by the Court what Plaintiffs would have done differently if they knew that, under the policy, Dr.

Benavides could not unreasonably withhold his consent to settle, Plaintiffs stated they would have brought the instant lawsuit sooner. However, bringing this lawsuit sooner would not have changed its outcome. The Court also notes that Plaintiffs settlement demand was the policy limit, and Plaintiffs have not contended that their demand would have been any different if they knew Dr. Benavides could not unreasonably withhold his consent to settle. In fact, Plaintiffs still have the opportunity to present Dr. Benavides and CIC with alternative settlement demands. Therefore, they cannot show that they detrimentally relied on CIC's representations concerning the consent clause. *Johnson & Johnson Medical, Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex. 1996) (holding that fraud claim failed because claimant could not produce evidence showing that she relied to her detriment on a representation).

Plaintiffs further contend that the overt acts of Defendants' alleged conspiracy "include transferring, concealing, or misrepresenting policy conditions and insurance coverage to Plaintiffs' detriment." (Dkt. No. 3 at Ex. A, ¶ 6.4). However, as discussed above, Plaintiffs have failed to state a claim for fraudulent transfer. As such, fraudulent transfer cannot be used to support Plaintiffs' civil conspiracy cause of action. *See Western Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc.*, 91 Fed.Appx. 901, 904 (5th Cir. 2003) (holding civil conspiracy claim failed because evidence did not support fraudulent transfer claim).

The Court also notes that a claim for civil conspiracy cannot be based on an insured's failure to bring an action against an insurer for an amount in excess of its policy limits based on a prior judgment. *See Samford*, 529 S.W.2d at 86-87. Because a *Stowers* action belongs to the insured alone, the insured has the discretion to bring the action or not. *See id.* If it cannot be a conspiracy for an insured to decline to sue its insurer for the policy excess after judgment, it

cannot be a conspiracy for an insured not to seek settlement or set a predicate for *Stowers* liability prior to the judgment.

In the state court petition, Plaintiffs allege that Defendants "secured execution of settlement offers by deception," citing section 32.46 of the Texas Penal Code.[27]   At the February 18th hearing, Plaintiff's counsel clarified that these overt acts were also unlawful pertaining to the civil conspiracy.   Assuming *arguendo* that Plaintiffs' assertion is not conclusory, *see Hale v. Harney*, 786 F.2d 688, 689 (5th Cir. 1986) (holding conclusory allegations cannot support conspiracy claim), this allegation cannot support Plaintiff's claim for civil conspiracy.   The Texas Penal Code does not create a private cause of action.   *See Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied).   Again, to establish a civil conspiracy, there must be proof of an underlying tort—not an allegation that a statute under the state penal code has been violated.   *See, e.g., Toles v. Toles*, 113 S.W.3d 899, 913 (Tex.App.—Dallas 2003, no pet.) (stating that "[l]iability for civil conspiracy depends on participation in an underlying tort for which the plaintiff seeks to hold at least one of the defendants liable."").   If there is any relevance to Plaintiffs' assertion, it would be in their argument concerning an underlying tort for fraud.   However, as stated above, Plaintiffs cannot support such a claim.

Accordingly, the Court cannot determine, based on the allegations contained in Plaintiffs original petition, that Plaintiffs might be able to recover against Dr. Benavides (or CIC) for civil conspiracy.

---

[27] Section 32.46 of the Texas penal code provides in relevant part:
    (a)  A person commits an offense if, with intent to defraud or harm any person he, by deception:
      (1) causes another to  sign or execute any document affecting property or service or the pecuniary interest of any person …
Tex. Penal Code § 32.46.

### b. The Common Defense Doctrine Set Forth in *Smallwood* Necessitates Remand for Lack of Subject Matter Jurisdiction

Having concluded that there is no reasonable basis to predict that Plaintiffs might be able to recover against Dr. Benavides for any of the three causes of action alleged in Plaintiffs' original state-court petition, the Court now considers whether this same showing necessarily and equally compels foreclosure of all of Plaintiffs' claims against CIC. *See Boone,* 416 F.3d at 391. Under the "common defense" rule established in *Smallwood*, the Court must remand this case if the same principal that bars Plaintiffs' claims against Dr. Benavides, the non-diverse defendant, also bars Plaintiffs' claims against CIC, the diverse defendant. *See Rico v. Flores*, 481 F.3d 234, 244 (5th Cir. 2007). Here, the Court finds that Defendants' arguments in support of their claim of improper joinder constitute a common defense that applies to the entire case, rather than to the appropriateness of joinder.

First, Plaintiffs have sued for a declaration that Dr. Benavides is unreasonably withholding his consent to settle. A declaratory judgment interpreting the insurance contract's terms would bind both Dr. Benavides and CIC. *See* Tex. Civ. Prac. & Rem. Code § § 37.006(a) (stating "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."). Here, both defendants may successfully assert the defense that Plaintiffs lack standing to prevail on this claim. Therefore, there is no reasonable basis for predicting that Plaintiffs could succeed on their claim for declaratory judgment. *See Huckaby*, 293 F. Supp. 2d at 716-17 (granting the plaintiffs' motion to remand on the grounds that the defendants' defense that the plaintiffs lacked standing to bring their declaratory judgment action, along with the defendants' statute of frauds and collateral estoppel defenses, applied to both the non-diverse and diverse defendants).

28

Second, Plaintiffs allege that "Defendant Chicago Insurance Company and Benavides engaged in a fraudulent transfer" when Dr. Benavides allegedly transferred his *Stowers* rights by refusing to consent to settlement. (Dkt. No. 3 at Ex. A, ¶ 5.1).    The allegation of fraudulent transfer is against both defendants.  They share the common defense that, under Federal Rule 12(b)(6), Plaintiffs have failed to state a claim upon which relief can be granted for two reasons: (1) no transfer has occurred and (2) Plaintiffs may never be entitled to excess insurance proceeds, because Dr. Benavides cannot be forced to assert his *Stowers* rights.    Again, there is no reasonable basis for predicting that Plaintiffs could recover against either defendant for fraudulent transfer.

Third, Plaintiffs allege civil conspiracy against both Dr. Benavides and CIC for failing to disclose that Dr. Benavides's consent to settlement could not be unreasonably withheld and for engaging in a fraudulent transfer.[28]  Two or more persons must be involved in order to constitute a civil conspiracy.  *Murray*, 405 F.3d at 293.  Accordingly, Plaintiffs' civil conspiracy claim cannot be construed as a separate claim against CIC.  Further, Dr. Benavides and CIC once again share a common defense under Federal Rule 12(b)(6), that is, because the underlying offenses for the failure to disclose (fraud) and for fraudulent transfer fail, the civil conspiracy claim must fail. As with the other two claims, there is no reasonable basis for predicting that Plaintiffs could recover against either defendant for civil conspiracy.

Because there is no reasonable basis for predicting that Plaintiffs might be able to recover against either Dr. Benavides or CIC, and because both defendants share common defenses, the

---

[28] Dr. Benavides argues that the false representations alleged in connection with Plaintiffs' civil conspiracy claim were made by CIC, not Dr. Benavides, giving Plaintiffs a separate claim for false representation against CIC only. (*See* Dkt. Nos. 17 at ¶¶ 52-55 and 39 at ¶¶ 20-23).  However, nothing in Plaintiffs' complaint suggests a cause of action for false representation against CIC that is separate from Plaintiffs' civil conspiracy claim.  As previously stated, because civil conspiracy requires two or more persons, it must be asserted against both Dr. Benavides and CIC.

Court finds that Dr. Benavides was not improperly joined. *See Smallwood*, 385 F.3d at 576. The fact that Dr. Benavides, the in-state defendant, is not improperly joined, means diversity jurisdiction is destroyed. Accordingly, the case should be remanded back to state court.

### c. Plaintiffs' Request for Attorneys Fees and Costs

In addition to requesting remand, Plaintiffs include a paragraph in their motion entitled "Motion for Expedited Consideration and Attorneys Fees and Costs." (Dkt. No. 10 at ¶ 21). In this paragraph, Plaintiffs state that "Defendant Chicago Insurance's wrongful notice of removal was filed for the improper purpose of prolonging litigation and imposing costs to the Plaintiffs." (*Id.*). While Plaintiffs do not make a specific demand, the Court will construe this as a request for attorneys fees and costs under 28 U.S.C. § 1447(c). Section 1447(c) provides, in relevant part: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of this removal." 28 U.S.C. § 1447(c). In *Valdes v. Wal-Mart Stores, Inc.*, the Fifth Circuit Court of Appeals explained:

> The application of § 1447(c) requires consideration of the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case. We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper.

199 F.3d 290, 293 (5th Cir. 2000). Stated another way, "the question [for the court to consider] in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.*

Here, Defendants had objectively reasonable grounds for removal. As discussed above, the Court concludes that Plaintiffs failed to prove sufficient facts to state a valid claim against Dr. Benavides, which could lead Defendants to reasonably believe that he was improperly joined. The case should be remanded only because the common defense doctrine under

*Smallwood* applies.  As such, there is no indication that Defendants attempted to remove this case for an unreasonable or improper purpose.  Accordingly, Plaintiffs' request for attorney's fees and costs is denied.

## IV.    RECOMENDATION

For the foregoing reasons, the Court recommends that this case be remanded back to the 49th Judicial District Court of Webb County, Texas.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1).  A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) *(en banc)*.

SIGNED this 20th day of May, 2010, at Laredo, Texas.

J. SCOTT HACKER
United States Magistrate Judge

**To Ensure Proper Notice, Each Party Who Receives This Notice Shall Forward A Copy Of It To Every Other Party And Affected Non-party Even Though They May Have Been Sent One By The Court.**